UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JASON LINDEMANN and
KARRA LINDEMANN,

      Plaintiffs,

v.                       Case No. 8:18-cv-1546-T-33SPF

GLOBAL SERVICES GROUP,
LLC,

      Defendant.

_____/

### Order

    This matter comes before the Court in consideration of Plaintiffs Jason Lindemann and Karra Lindemann's Motion for Default Judgment (Doc. # 31), filed on September 21, 2018. The Court grants the Motion as set forth herein.

### I.   Background

    According to the Complaint, Jason allegedly incurred a debt "for personal, family, or household purposes, namely a payday loan with Midland Financial." (Doc. # 1 at ¶ 17). In June of 2017, Global Services Group — a debt collector that "regularly collects or attempts to collect debts for other parties" and "regularly uses the mail and telephone in a business the principal purpose of which is the collection of debts" — "began placing telephone calls to the Lindemann's

1

and their families" in an attempt to collect the debt. (Id. at ¶¶ 9-11, 17-18).

The Lindemanns — a married couple — allege Global Services Group "used an automatic telephone dialing system or a pre-recorded or artificial voice to place" these calls. (Id. at ¶ 86). These calls included pre-recorded messages that were left on Jason and Karra's cell phones, including the following message: "Hello. This is Beth from Global Services. Please call me back at 888-240-0182 regarding a personal matter. Thank you." (Id. at ¶ 19).

On June 27, 2017, Karra returned Global Services Group's calls. (Id. at ¶ 20). During that call, Karra spoke with a Global Services Group's representative who stated the calls "were in regard to a legal matter that Midland Financial had against [Jason] for breach of contract," but he did not disclose that Global Services Group is a debt collector. (Id. at ¶¶ 21-23). Additionally, the representative informed Karra "that if they could not resolve it [Global Services Group] would take legal action." (Id. at ¶ 24). The representative "initially refused to send anything in writing to" the Lindemanns and "informed [Karra] he could only send her something in writing if she had the intent to settle the matter while on the phone with him." (Id. at ¶¶ 25-26). The

Complaint alleges the representative's actions "are hallmark traits of what the FTC has coined 'fake debt collectors.'" (Id. at ¶ 28).

Despite its threat, the Lindemanns assert that Global Services Group never intended to, and could not, take legal action against them. (Id. at ¶¶ 70-79). They note that Global Services Group was "not registered with the Florida Office of Financial Regulation" as a collection agency, as required by law before attempting to collect a debt. (Id. at ¶¶ 72, 75). So, the Lindemanns reason, Global Services Group knew it "could not legally sue [Jason] to collect the debt without first registering" as a collection agency. (Id. at ¶¶ 76, 79). Even had Global Services Group been properly registered, Global Services Group allegedly "could not sue [Jason] to collect the alleged debt because it would be void as either an unauthorized deferred presentment transaction[] under Florida Statute section 560.125(1) or an unauthorized consumer finance loan with an interest rate above 18 percent per annum under Florida Statute section 516.02(c)." (Id. at ¶ 77).

Later, Global Services Group did email Jason a collection letter stating that the current balance on the payday loan was $1,080 and that Midland Financial was the

original creditor. (<u>Id.</u> at ¶¶ 29-30; Doc. # 1-1). But Midland Financial could not be the original creditor because it "is not a lender — it only connects consumers to lenders." (Doc. # 1 at ¶¶ 51-52). The Lindemanns then "refused to pay the debt and told [Global Services Group] to stop calling." (<u>Id.</u> at ¶ 31). But Global Services Group "stated it would continue to call until the debt was paid." (<u>Id.</u> at ¶ 32).

True to its word, Global Services Group "continued to call in an attempt to collect the alleged debt." (<u>Id.</u> at ¶ 33). When the Lindemanns still did not pay the debt, Global Services Group called Karra's parents. (<u>Id.</u> at ¶ 34). Karra's mother told Global Services Group's representative to never call again, but the representative said that Global Services Group could keep calling. (<u>Id.</u> at ¶¶ 35-37). Indeed, Global Services Group kept calling Karra's parents. (<u>Id.</u> at ¶ 38).

On June 26, 2018, the Lindemanns filed this action against Defendant Global Services Group, LLC, and four individual Defendants, alleging violations of the Telephone Consumer Protection Act, 47 U.S.C. §§ 227 <u>et</u> <u>seq.</u> (TCPA), the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 <u>et</u> <u>seq.</u> (FDCPA), and the Florida Consumer Collection Practices Act, Fla. Stat. §§ 559.55 <u>et</u> <u>seq.</u> (FCCPA). (Doc. # 1).

After initiation of this action, the Lindemanns served Global Services Group on July 24, 2018. (Doc. # 10). But Global Services Group failed to appear or otherwise respond to the Complaint. So, the Lindemanns applied for entry of Clerk's default, (Doc. # 18), and Clerk's default was entered on August 20, 2018. (Doc. # 20). The four other Defendants named in the Complaint have all been dismissed. (Doc. ## 29, 32).

The Lindemanns then filed the instant Motion and two Declarations in support on September 21, 2018. (Doc. ## 31, 31-1, 31-2).

## II.  **Legal Standard**

Federal Rule of Civil Procedure 55(a) provides: "When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."  A district court may enter a default judgment against a properly served defendant who fails to defend or otherwise appear pursuant to Federal Rule of Civil Procedure 55(b)(2).  DirectTV, Inc. v. Griffin, 290 F. Supp. 2d 1340, 1343 (M.D. Fla. 2003).

The mere entry of a default by the Clerk does not, in itself, warrant the Court entering a default judgment. See

5

_Tyco Fire & Sec. LLC v. Alcocer_, 218 F. App'x 860, 863 (11th Cir. 2007)(citing _Nishimatsu Constr. Co. v. Hous. Nat'l Bank_, 515 F.2d 1200, 1206 (5th Cir. 1975)).  Rather, a court must ensure that there is a sufficient basis in the pleadings for the judgment to be entered.  _Id._  A default judgment has the effect of establishing as fact the plaintiff's well-pled allegations of fact and bars the defendant from contesting those facts on appeal.  _Id._

**III. Analysis**

    **A. TCPA**

        **1. Liability under the TCPA**

The relevant portion of the TCPA provides:

> It shall be unlawful for any person within the United States . . . .
>
> (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . .
>
> (iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call, unless such call is made solely to collect a debt owed to or guaranteed by the United States . . .

47 U.S.C. § 227(b)(1)(A)(iii).

In their Complaint and Motion, the Lindemanns claim Global Services Group placed multiple calls to Jason and Karra's cell phones "us[ing] an automatic telephone dialing system or a pre-recorded or artificial voice" and did not make these calls for "emergency purposes." (Doc. # 1 at ¶¶ 86-87). The Lindemanns insist Global Services Group "willfully or knowingly violated the TCPA." (Id. at ¶ 88).

Both Jason and Karra submitted Declarations, in which they list the calls each received on his or her respective cell phones. (Doc. # 31-1; Doc. # 31-2). Specifically, Jason states that Global Services Group left three pre-recorded messages on his cell phone on June 26 and June 28, 2017. (Doc. # 31-1). Karra states that Global Services Group left two pre-recorded messages on her cell phone on June 28, 2017. (Doc. # 31-2).

Based upon the Clerk's entry of default, the well-pled factual allegations contained in the Complaint, the Motion, and Declarations, the Court determines that the Motion should be granted as to the TCPA claim. The Lindemanns are entitled to default judgment on Counts XII and XIII.

## 2. **Damages under the TCPA**

Regarding damages available for a violation of the statute, the TCPA provides in relevant part:

A person or entity may, if otherwise permitted by
the laws or rules of court of a State, bring in an
appropriate court of that State . . .

(B) an action to recover for actual monetary loss
from such a violation, or to receive $500 in damages
for each such violation, whichever is greater . .
. If the Court finds that the defendant willfully
or knowingly violated this subsection, the court
may in its discretion, increase the amount of the
award to an amount equal to not more than 3 times
the amount available under subparagraph (B) of this
paragraph.

47 U.S.C. § 227(b)(3).

The Lindemanns request an award of statutory damages of $500 per call for the total amount of $2,500 for violations of the TCPA. (Doc. # 31 at 4-5). Specifically, they request $1,500 for Jason and $1,000 for Karra. (Id.).

This amount is capable of accurate and ready mathematical computation or ascertainment from the Lindemanns' Motion and Declarations. In his Declaration, Jason says he received three calls from Global Services Group. (Doc. # 31-1). In her Declaration, Karra averred she received two calls. (Doc. # 31-2). The Court accordingly finds in favor of the Lindemanns in the amount of $1,500 for Jason's TCPA claim and $1,000 for Karra's TCPA claim.

**B. FDCPA**

    **1. Liability under the FDCPA**

To state a claim under the FDCPA, the plaintiff must prove that: "(1) the plaintiff has been the object of collection activity arising from consumer debt, (2) the defendant is a debt collector as defined by the FDCPA, and (3) the defendant has engaged in an act or omission prohibited by the FDCPA." Fuller v. Becker & Poliakoff, P.A., 192 F. Supp. 2d. 1361, 1366 (M.D. Fla. 2003)(quoting Kaplan v. Assetcare, Inc., 88 F. Supp. 2d 1355, 1360-61 (S.D. Fla. 2000)). The Court addresses each factor in turn.

    **a.   Collection Activity Arising from Consumer Debt**

There are two requirements for the initial determination that the Lindemanns were the object of collection activity arising from a consumer debt. Frazier v. Absolute Collection Serv., Inc., 767 F. Supp. 2d 1354, 1363 (N.D. Ga. 2001). There must be (1) collection activity (2) that relates to a consumer debt. Id.

The "FDCPA does not specifically define 'collection activity.'" LeBlanc v. Unifund CCR Partners, 601 F.3d 1185, 1193 n.15 (11th Cir. 2010). Nonetheless, "[w]hile the statute contains no clear definition of what constitutes a 'debt collection activity,' courts, in attempting to effect the

purpose of the FDCPA, are lenient with its application." Sanz
v. Fernandez, 633 F. Supp. 2d 1356, 1359 (S.D. Fla. 2009)
(citing Heintz v. Jenkins, 514 U.S. 291, 293-96 (1995)).

The Complaint alleges that Global Services Group made
numerous calls to the Lindemanns and Karra's parents and left
pre-recorded messages "[i]n an attempt to collect the alleged
debt." (Doc. # 1 at ¶¶ 17-19). Additionally, a collection
letter was sent to Jason in which Global Services Group
asserted Jason owed $1,080. (Doc. # 1-1). The telephonic
communications and letter, therefore, constitute collection
activity.

The Court next turns to whether the collection activity
was aimed at collecting a consumer debt. Pursuant to 15 U.S.C.
§ 1692a(5), a debt is "any obligation or alleged obligation
of a consumer to pay money arising out of a transaction . .
. [that is] primarily for personal, family or household
purposes." Thus, the FDCPA is limited to "consumer debt,"
Heinz, 514 U.S. at 293, and does not cover business debts,
Lingo v. City of Albany Dep't of Cmty & Econ. Dev., 195 F.
App'x 891, 893 (11th Cir. 2006).

The Complaint asserts Global Services Group was
attempting to collect an alleged debt — "a payday loan with
Midland Financial allegedly incurred by [Jason]." (Doc. # 1

10

at ¶ 17). Such payday loan is a debt "arising from transactions incurred for personal, family, or household purposes." (Id.). Thus, the Court finds that the well-pled allegations in the Complaint demonstrate that the alleged debt constituted a consumer debt. Accordingly, the Lindemanns have established the first element of the FDCPA claim — there was collection activity for a consumer debt.

### b. Debt Collector

A debt collector is "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6).

According to the Complaint, Global Services Group is a "debt collector" that "regularly collects or attempts to collect debts for other parties" and "regularly uses the mail and telephone in a business the principal purpose of which is the collection of debts." (Doc. # 1 at ¶¶ 9-11). Taking the well-pled allegations in the Complaint as true, the Lindemanns have established that Global Services Group was a debt collector, and thus, the Lindemanns have satisfied the second element of the FDCPA claim.

### c. Acts Prohibited under the FDCPA

In their Complaint and Motion, the Lindemanns allege that Global Services Group violated various provisions of the FDCPA, including §§ 1692d(6), 1692e(2)(A), 1692e(2)(B), 1692e(5), 1692e(10), 1692e(11), and 1692g(A). (Doc. # 1 at 19-26; Doc. # 31 at 2-4).

The Lindemanns allege Global Services Group violated § 1692d(6) by "[p]lacing calls without meaningful disclosure of its identity." (Doc. # 31 at 2); see also 15 U.S.C. § 1692d(6) (making it unlawful for a debt collector to place phone calls "without meaningful disclosure of the caller's identity"). The Lindemanns emphasize that the pre-recorded messages left on their cell phones by Global Services Group's representative "Beth" did not state that Global Services Group is a debt collector or that she was calling about a debt. (Doc. # 31 at 10-11). Indeed, those pre-recorded messages to Jason and Karra merely ask them to call Global Services Group back about a "personal matter." (Doc. # 1 at ¶ 19). Therefore, Global Services Group did not meaningfully disclose its identity. See Valencia v. Affiliated Grp., Inc., No. 07-61381-CIV-JOHNSON, 2008 WL 4372895, at *3 (S.D. Fla. Sept. 24, 2008)("This voice mail [in which the Defendant's representative asked for a return call] fails to meet the

FDCPA meaningful disclosure requirements in § 1692d(6) because it does not state the nature of Defendant's business."). Jason is entitled to a default judgment on Count I and Karra is entitled to a default judgment on Count II.

Similarly, the Lindemanns also allege Global Services Group violated § 1692e(11) by "[f]ailing to disclose its status as a debt collector in telephone messages to [Jason]." (Doc. # 31 at 3); see also 15 U.S.C. § 1692e(11)(making the "failure to disclose in the initial [] communication with the consumer . . . that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose, and the failure to disclose in subsequent communications that the communication is from a debt collector" unlawful). The Complaint alleges that the Global Services Group's representative "Beth" failed to disclose that Global Services Group was attempting to collect a debt or was a debt collector in the pre-recorded messages left for Jason — the "consumer" — on his cell phone. (Doc. # 1 at ¶ 19). Therefore, taking these well-pled allegations as true, Global Services Group violated § 1692e(11) and Jason is entitled to a default judgment on Count IX.

Next, the Lindemanns assert Global Services Group violated §§ 1692e(2)(A) and 1692e(2)(B) by falsely

representing "the character or legal status of the alleged debt" and "the services rendered by [Global Services Group] in connection with the collection of the debt" in its communications with Karra. (Doc. # 31 at 3). Section 1692e(2)(A) states that "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt," such as making a false representation about "the character, amount, or legal status of any debt." 15 U.S.C. § 1692e(2)(A). Section 1692e(2)(B) further provides that a debt collector may not make a false representation about "any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt." § 1692e(2)(B).

According to the Lindemanns, Global Services Group made false representations and threats to Karra during the return phone call she made. (Doc. # 31 at 14). Global Services Group allegedly threatened legal action unless the Lindemanns paid the debt but did not actually take legal action when the Lindemanns refused to pay. (Doc. # 1 at ¶¶ 24, 69). The Complaint also alleges that the debt was unenforceable under Florida law (Id. at ¶¶ 68, 77), and even if the debt was enforceable, Global Services Group could not have sued because it is not registered as a consumer collection agency.

(Id. at ¶¶ 72-75). Finally, the Complaint alleges that Global Services Group knew it did not have the right to sue and never intended to do so, despite its threats to the contrary. (Id. at ¶¶ 70-71, 78-79).

Thus, taking the well-pled allegations as true, Global Services Group falsely represented the legal character and status of the debt in violation of § 1692e(2)(A) and falsely represented the services rendered by it in connection with the collection of the debt in violation of § 1692e(2)(B) by threatening legal action. Therefore, Karra is entitled to a default judgment on Counts III and IV.

Relatedly, in Counts V and VI, the Lindemanns allege Global Services Group violated § 1692e(5) in its communications with Karra by "[t]hreatening to take an action that cannot legally be taken" and "that it did not intend to take." (Doc. # 31 at 3-4); see also 15 U.S.C. § 1692e(5)(making it unlawful for a debt collector to "threat[en] to take any action that cannot legally be taken or that is not intended to be taken"). As discussed above, the Complaint alleges that Global Services Group threatened to take legal action against the Lindemanns, even though it never intended to sue and knew it could not sue because Global Services Group is not registered as a collection agency and

15

the debt was unenforceable. (Doc. # 1 at ¶¶ 70-79). Therefore, based on these well-pled allegations, Global Services Group violated § 1692e(5) and Karra is entitled to a default judgment on Counts V and VI.

Additionally, Global Services Group allegedly violated § 1692e(10) by "us[ing] false representations or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer" as to both Jason and Karra. (Doc. # 31 at 2, 4); see also 15 U.S.C. § 1692e(10)(making the "use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer" unlawful). For Karra's claim, the Complaint alleges Global Services Group violated § 1692e(10) by representing that it would take legal action against the Lindemanns, although it knew it could not. (Doc. # 31 at 15-16; Doc. # 1 at ¶¶ 70-79). Therefore, Global Services Group made a false representation in an attempt to collect the debt and violated § 1692e(10). Karra is entitled to a default judgment on Count VII.

For Jason's § 1692e(10) claim, the Lindemanns allege the false representation was Global Services Group's false identification of Midland Financial as the original creditor in the collection letter sent to Jason. (Doc. # 31 at 14).

16

According to the Complaint, Midland Financial does not lend money and thus could not be the original creditor. (Doc. # 1 at ¶¶ 30, 51, 52). Therefore, the representation in the collection letter that Midland Financial is the original creditor was false and Global Services Group has violated § 1692e(10). Jason is entitled to a default judgment on Count VIII.

Finally, the Lindemanns allege Global Services Group violated § 1692g(a) by "[f]ailing to send [a] validation notice" to Jason. (Doc. # 31 at 3). Section 1692g(a) requires that a written notice containing various information about the debt be sent within five days of the debt collector's initial communication with the alleged debtor. 15 U.S.C. § 1692g(a). Here, the Lindemanns note that, while Global Services Group did send Jason a collection letter, that letter "does not contain the notice required by 15 U.S.C. § 1692g(a)." (Doc. # 1 at ¶ 47; Doc. # 31 at 16; Doc. # 1-1). Indeed, the letter does not contain "a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification or judgment will be mailed to the consumer by the debt collector," as required under § 1692g(a)(4). 15 U.S.C. §

1692g(a)(4). Therefore, Jason is entitled to a default judgment for Count X.

Accordingly, as the well-pled allegations demonstrate the elements necessary to prove a FDCPA claim, the Lindemanns have established they are entitled to a default judgment against Global Services Group on their various FDCPA claims.

## 2. **Damages under the FDCPA**

Regarding damages, 15 U.S.C. § 1692k provides:

(a)  Amount of damages

Except as otherwise provided by this section, any debt collector who fails to comply with any provision of this subchapter with respect to any person is liable to such person in an amount equal to the sum of—

(1) any actual damage sustained by such person as a result of such failure;

(2) (A) in the case of any action by an individual, such additional damages as the court may allow, but not exceeding $1,000.00 . . .

(3) in the case of any successful action to enforce the foregoing liability, the costs of the action, together with a reasonable attorney's fee as determined by the court . . . .

(b) Factors considered by court

In determining the amount of liability in any action under subsection (a) of the section, the court shall consider, among other relevant factors—

> (1) In any individual action under subsection (a)(2)(A) of this section, the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and

> the extent to which such noncompliance was intentional . . . .

15 U.S.C. § 1692k.

The Lindemanns request an award of statutory damages as provided by 15 U.S.C. § 1692k(a)(2)(A) for violation of the FDCPA. The Complaint demonstrates that Global Services Group violated numerous provisions of the FDCPA in regard to both Jason and Karra. Therefore, the Lindemanns are entitled to the maximum statutory damages of $1,000 each for Global Services Group's violations of the FDCPA.

### C. **FCCPA**

#### 1. **Liability under the FCCPA**

To state a claim under the FCCPA, the plaintiff must prove that the defendant:

> (7) Willfully communicate[d] with the debtor or any member of her of his family with such frequency as can reasonably be expected to harass the debtor or her or his family, or willfully engaged[d] in other conduct which can reasonably be expected to abuse or harass the debtor or any member of her or his family.

Fla. Stat. § 559.72(7).

The Complaint alleges that Global Services Group violated the FCCPA by calling Jason numerous times and leaving pre-recorded voice messages in which Global Services Group did not disclose it is a debt collector. (Doc. # 1 at ¶¶ 18-19, 147). Global Services Group called Jason and Karra's cell

phones and called Karra's parents as well, but refused to stop calling even when the Lindemanns asked. (Id. at ¶¶ 31-38). Global Services Group additionally threatened legal action during a conversation with Karra. (Id. at ¶ 24).

Therefore, the Court finds that the well-pled allegations, taken as true, establish a violation of section 559.72(7) of the FCCPA as to Jason. See Story v. J. M. Fields, Inc., 343 So. 2d 675, 677 (Fla. 1st DCA 1977)("The trier of fact may consider such communications harassing in their frequency, however, when they continue after all such information has been communicated and reasonable efforts at persuasion and negotiation have failed. Beyond that point communication 'can reasonably be expected to harass the debtor or his family,' because it tends only to exhaust the resisting debtor's will."). The Motion is granted as to the FCCPA claim and Jason is entitled to default judgment on Count XI.

## 2. **Damages under the FCCPA**

Section 559.77(2) states in pertinent part:

Any person who fails to comply with any provision of [Fla. Stat. § 559.72] is liable for actual damages as the court may allow, but not exceeding $1,000, together with court costs and reasonable attorney's fees incurred by the plaintiff. In determining the defendant's liability for any additional statutory damages, the court shall consider the nature of the defendant's

noncompliance with [Fla. Stat. § 559.72], the frequency
and persistence of the noncompliance, and the extent to
which the noncompliance was intentional . . .

Fla. Stat. § 559.77(2).

The Lindemanns request an award of $1,000 in statutory damages under section 559.77(2) for Jason. The Court agrees Jason is entitled to that amount for Global Services Group's violation of the FCCPA.

### D. **Attorney's Fees**

The Lindemanns assert in their Motion that they are entitled to reasonable attorney's fees for prosecution of the FDCPA and FCCPA claims. (Doc. # 31 at 20-21). But the Lindemanns do not provide any information as to the amount of attorney's fees that have been incurred in this action. Rather, they "request[] that this Court retain jurisdiction in the matter of [their] attorney's fees and costs with Plaintiffs' motion to be filed in accordance with Local Rules." (Id. at 21).

Because information about the attorney's fees and costs has not been provided, the Court will retain jurisdiction over the case for the limited purpose of ruling on the forthcoming motion for attorney's fees. The Lindemanns are directed to file such motion by October 15, 2018.

## IV. Conclusion

The Court determines Jason is entitled to $1,500 in statutory damages under the TCPA, $1,000 in statutory damages under the FDCPA, and $1,000 in statutory damages under the FCCPA. Karra is entitled to $1,000 in statutory damages under the TCPA and $1,000 in statutory damages under the FDCPA. After judgment is entered and the case is closed, the Court will retain jurisdiction to rule on the Lindemanns' motion for attorney's fees, which is due by October 15, 2018.

Accordingly, it is now

**ORDERED, ADJUDGED,** and **DECREED:**

(1) Plaintiffs Jason Lindemann and Karra Lindemann's Motion for Default Judgment (Doc. # 31) is **GRANTED.**

(2) The Clerk is directed to enter judgment in favor of Plaintiffs and against Global Services Group in the amount of $5,500 ($3,500 for Jason Lindemann and $2,000 for Karra Lindemann) and thereafter to **CLOSE THIS CASE.**

(3) Plaintiffs are directed to file their motion for attorney's fees by **October 15, 2018.**

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this <u>3rd</u> day of October, 2018.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE